UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARCUS C.,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00728 EAW

**INTRODUCTION**

Represented by counsel, Plaintiff Marcus C. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). (*See id.*).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 7; Dkt. 12). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied.

**BACKGROUND**

On August 5, 2021, Plaintiff filed a protective application for SSI. (*See* Dkt. 3 at 275-84).[1] Plaintiff alleged that he was disabled from a gunshot wound to his right forearm and having no feeling in his left thumb, with a disability onset date of August 5, 2021. (*See id.* at 276, 315). The Social Security Administration ("SSA") initially denied Plaintiff's application, as well as upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*See id.* at 81-100, 106-31, 148-62). Following a two-part hearing on March 3, 2023, and September 12, 2023, ALJ Paul Georger issued an unfavorable decision on October 4, 2023. (*See id.* at 20-80). Plaintiff requested Appeals Council review, which was denied. (*See id.* at 6-12). Plaintiff filed the present action on March 28, 2024. (Dkt. 1).

**LEGAL STANDARDS**

**I.   District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by "substantial evidence." *See* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d

---

[1]   Page numbers in docket citations refer to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation modified). However, "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citation modified).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a); *see Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* But if the claimant does have at least one severe impairment, the ALJ continues to step three. *Id.*

At step three, the ALJ examines whether a claimant's severe impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* § 416.920(d). If the severe impairment meets or medically equals the criteria of a listed impairment and has lasted, or is expected to last, for a continuous period of at least 12 months, then the claimant is disabled. *Id.* If not, the ALJ

- 3 -

determines the claimant's residual functional capacity ("RFC"), which is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "'A regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* But if he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant, in light of his or her age, education, and work experience, "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation modified); *see* 20 C.F.R. § 416.960(c).

## DISCUSSION

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a). (*See* Dkt. 3 at 23-34). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of August 5, 2021. (*See id.* at 26).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) a history of a gunshot wound to the right forearm and right shoulder, status-post open reduction internal fixation ("ORIF") to the right forearm; (2) a right wrist fracture, status-post surgical reconstruction; (3) a claw restriction to the right hand; and (4) degenerative disc disease of the lumbar spine. (*See id.*).

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the Listings. (*See id.* at 26-27). In particular, the ALJ considered Listings 1.15 and 1.18. (*See id.*). Then, before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), except that he: (1) could not lift or carry anything above 5 pounds with his right arm; (2) could lift and carry 20 pounds with his left arm; (3) could sit for 2 hours at a time during an 8-hour workday; (4) could stand and walk for 1 hour at a time, for a total of 4 hours during an 8-hour workday; (5) could not push or pull with his right arm; (6) could occasionally push and pull with his left arm; and (7) could occasionally handle and finger with his right hand. (*See id.* at 27).

At step four, the ALJ found that Plaintiff had no past relevant work. (*See id.* at 32). But at step five, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff, given his age, education, and RFC, could perform work existing in significant numbers in the national economy as a stock checker, cashier, or mailroom clerk. (*See id.* at 33). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Act as of August 5, 2021. (*See id.* at 34).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ's step five determination was unsupported by substantial evidence. (*See* Dkt. 7-1 at 6-18). More specifically, Plaintiff argues that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") and that the ALJ failed to resolve that conflict. (*See id.*). The Court has considered that argument and, for the reasons discussed below, finds it without merit.

At step five of the sequential evaluation, "the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022). "Because the shift in step five is limited, the Commissioner need not provide additional evidence of the claimant's residual functional capacity." *Id.* (citation modified). Ultimately, however, "if the Commissioner cannot meet his or her burden to demonstrate that such work exists, then the claimant will be found disabled under the Act." *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) (citation modified).

According to the regulations, "work exists in the national economy when there is a significant number of jobs (in one or more occupations) having the requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b) (citation modified). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" *Id.* But

"work may be considered to exist in the national economy regardless of whether it exists in the immediate area of the claimant's residence, whether there is a specific job vacancy, or whether the claimant would be hired upon applying to the position." *Sanchez*, 336 F. Supp. 3d at 177 (citation modified). Thus, "an ALJ may rely on the Medical-Vocational Guidelines or upon vocational expert testimony to determine whether the claimant's skills are applicable to other work." *Id.* (citation modified). "No particular number of positions need be identified: so long as it exists in sufficiently significant numbers, '[t]he Commissioner need only show one job existing in the national economy that [the claimant] can perform.'" *Id.* (quoting *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011)).

Further, as relevant here, Social Security Ruling 00-4p "governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019); *see* SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). Under that ruling, "the Commissioner relies primarily on the [DOT] for information about the job's requirements but may also use vocational experts to resolve complex vocational issues." *Lockwood*, 914 F.3d at 91 (citation modified). "If the Commissioner does consider the testimony of such experts, however, [he or] she must be alert to the possibility of apparent unresolved conflicts between the testimony and the [DOT]." *Id.* (citation modified). "In light of this possibility, [SSR 00-4p] tasks the Commissioner with an affirmative responsibility to ask about any possible conflict and to elicit a reasonable explanation for any such conflict before relying on the vocational expert's testimony." *Id.* (citation modified).

In this case, during the hearing on September 12, 2023, the ALJ asked the VE whether there were any jobs that a hypothetical individual with Plaintiff's RFC could perform. (*See* Dkt. 3 at 51-52). The VE responded that the hypothetical individual could work as a stock checker, cashier, or mailroom clerk, but the number of available positions in the national economy for each job needed to be eroded by 50% to account for the hypothetical individual's limitation to occasional handling and fingering with the right hand because all three jobs required frequent handling and fingering according to the DOT. (*See id.*).

Plaintiff's hearing counsel asked the VE how he arrived at the 50% erosion figure, specifically regarding the cashier position. (*See id.* at 53). The VE explained:

> I'm kind of relying on my experience working in vocational rehabilitation over the last 40 plus years. I would use an example of a smoke shop where they're selling pipes, tobacco, and so forth, those usually aren't large scale situations unless you're on the Indian reservation. And you might be sitting at the shop for 15, 20 minutes before somebody comes in. And I think that sporadic traffic would probably equate into a lot of cases only having to use your handling and fingering occasionally. Again, you wouldn't look for this job in . . . large retail environments simply because I believe the hand usage . . . requirement would exceed what was put forth in the hypothetical. But . . . a small gift shop, a smoke shop, a Sally Beauty would be an example of a smaller retail environment. And again, . . . your customer traffic tends to be sporadic. But I would not rule out some of those positions where your reaching and handling would probably [be] frequent, . . . that's why I eliminated half the jobs just based on my experience.

(*Id.* at 53-54). The VE further explained that he had personally observed the existence of cashier positions requiring only occasional handling and fingering because of

computerized cash systems and barcode scanner technology and, in fact, "tr[ied] to develop placement for those positions." (*See id.* at 54-55). The ALJ ultimately accepted the VE's explanation:

> Although the [VE's] testimony is inconsistent with the information contained in the [DOT], there is a reasonable explanation for the discrepancy. The [VE] testified that he relied on his experience over the years with regard to the jobs identified and also placement of clients in such jobs, which explained the inconsistency with the DOT that requires such an individual to have frequent handling and fingering ability and other required capacities. The [VE] further explained that such jobs require a person to sit from 15 to 20 minutes before someone comes in and that sporadic traffic would equate into occasional handling and fingering and not frequent use in this regard.

(*See id.* at 33).

The Court finds that the ALJ met his "affirmative responsibility to ask about any possible conflict between vocational expert evidence and information provided in the [DOT]." *Lockwood*, 914 F.3d at 93 (citation modified). This is not a case in which the ALJ actually failed to address an inconsistency between the VE's testimony and the DOT. *See, e.g.*, *Hernandez v. Comm'r of Soc. Sec.*, No. 20 CV 3810 (AMD), 2021 WL 5999623, at *4 (E.D.N.Y. Dec. 19, 2021) ("The ALJ did not reconcile the apparent discrepancy between the VE's testimony—that the plaintiff could be an Electrical Accessories Assembler, a Sealing Machine Operator, and Assembler or a Carding Machine Operator—and the DOT, which specifies that these jobs require significant reaching, including reaching overhead."). What is more, the VE's testimony constituted substantial evidence that a hypothetical individual with Plaintiff's RFC could perform 50% of the cashier

positions available in the national economy. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (concluding that "the ALJ reasonably credited [the vocational expert's] testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record."); *Maria A. R. v. Kijakazi*, No. 6:21-CV-0290 (DEP), 2022 WL 2954376, at *12 (N.D.N.Y. July 26, 2022) ("A vocational expert's professional experience has long been recognized as a proper basis for either supplementing the DOT or resolving conflicts between testimony and the DOT." (citation modified)). And the number of available cashier positions following the 50% erosion—350,000—was sufficiently significant. *See Sanchez*, 336 F. Supp. 3d at 177 (acknowledging that jobs with 9,000 to 10,000 positions available nationwide "have typically been found to be sufficiently 'significant' to meet the Commissioner's burden." (citation modified)). Accordingly, the ALJ's step five determination was supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   January 23, 2026
         Rochester, New York